### C. C. MIMS v. THE STATE.

No. 6073. Decided January 26, 1921.

**Murder—Manslaughter—Newly Discovered Testimony—Motion for New Trial.**

Where, upon appeal from a conviction of manslaughter, the motion for new trial set out newly discovered testimony, but it appeared from the record that this testimony was not probably true in the light of all the facts, and taken in its most favorable light to appellant it would be but cumulative, there was no reversible error.

Appeal from the Criminal District Court of Tarrant. Tried below before the Honorable Geo. E. Hosey.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was allotted five years in the penitentiary under a conviction for manslaughter.

The motion for new trial alleges the court in several instances erred with reference to testimony and refers to bills of exception, but there are no bills of exception in the record. The only ground that needs revision is the refusal of the court to grant a new trial on account of newly discovered testimony. His application for a new trial is verified by his own affidavit that he was not aware of the testimony of the absent witness until after his conviction, and in general terms alleges that he used reasonable diligence to ascertain the facts. What his diligence was is not stated except in the most general way, that he used reasonable diligence in preparing his case. The absent witness filed an affidavit in which he states that on the night of the homicide he was standing in front of the building where the shooting occurred and saw from the outside witness Robison approach defendant and catch him by the right arm and hold him while the deceased Fitzgerald approached and assaulted appellant, and that defendant with his left hand drew his pistol from his pocket and fired, and that he then walked away; that the occasion of his being at this place was that the defendant had his, witness' pistol and that he was hunting him that night to take it away from him as he understood he was drinking. He says that after the trial he went to the sister of appellant and told her what he knew. The sister did not file an affidavit, and, so far as the record is concerned, did not appear and make a statement in corroboration of the statement of the affiant witness. Outside of the statement of the absent witness there is nothing to indicate that appellant had the pistol of that witness. Appellant took the witness stand and testified, but did not claim the pistol belonged to the absent witness, though that was not specifically discussed. The testimony of all the witnesses, both for the State and the appellant, excludes the idea that Robison had hold of appellant at the time he shot deceased Fitzgerald. Three or more eyewitnesses testified. Briefly stated, the evidence shows that when the parties met at the place of the shooting words came between them, and Robison walked up to appellant and told him to put up his pistol, which he did. The witness Renning corroborates the witness Robison and also appellant's witness Smith that no one had hold of appellant at the time of the shooting. There is an issue as to what Fitzgerald was doing at the time he was shot. The defense claimed that he was walking towards appellant at the time. This was controverted. The witnesses place the distance between appellant and deceased between eight and ten feet and that Fitzgerald was unarmed; at least the officers and other witnesses who testified in regard to the matter failed to find any arms about him of any character, even a knife. Appellant

claimed that deceased had a knife in his hand when he shot.   Appellant testified with reference to the relation of the parties at the time he shot, that Mr. Robison-had hold of his right arm and that he reached with his left hand and got his pistol and pushed Robison away from him and transferred the pistol to his right hand and fired twice.   In view of this record we are of opinion that this testimony was not probably true in the light of all the facts, and taken in its most favorable light to defendant it would be but cumulative.   No witness in the case testified that Robison had hold of defendant when he shot. Robison testified he, prior to this, had hold of appellant and told him to put up his pistol, which he did, and he turned and walked away from him and appellant drew his pistol and told Fitzgerald he was going to kill him, and did kill him.   We are of opinion under this statement there is no reversible merit in the application for a new trial.

The judgment therefore will be affirmed.

*Affirmed.*