### JAMES WALKER V. THE STATE.

No. 23496. Delivered November 27, 1946.
State's Motion for Rehearing Granted January 29, 1947.
Appellant's Motion for Rehearing Overruled May 7, 1947.

*Walter Nelson, Jr., Alan B. Haley,* and *McDonald & Anderson,* all of Wichita Falls, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is an assault with intent to murder. The punishment assessed is confinement in the state penitentiary for a term of two years.

Appellant's first contention is that the evidence is insufficient to sustain his conviction of an assault with intent to murder, because there is not any evidence to show that, at the time of the stabbing, he entertained the specific intent to kill. With this contention, we are unable to agree.

The record reflects that Arthur Bland, the injured party, was employed by the Ben E. Keith Company at Wichita Falls as a shipping clerk. The company was engaged in the wholesale sale of fresh fruits, etc. On the night of January 18, 1946, while loading trucks which were to distribute the fruits, vegetables, etc., on the next morning, Bland saw appellant—as he walked along the loading dock—steal an orange or two from a broken crate. He called to appellant but appellant kept on going.

Bland then threw a 2x4 scantling about three feet long in the back of a pick-up truck, overtook appellant, and accused him of stealing oranges from the Keith Company. Appellant denied having stolen the oranges. This led to some heated argument, in which appellant used some very profane and insulting language. Bland picked up the scantling and appellant advanced before him (Bland) with an open pocket knife. Bland struck appellant and, in so doing, slipped and fell to the ground; when he did so, appellant got on top of him and stabbed him in the breast. Bland was then taken to Wichita General Hospital, where he received medical attention. One of the wounds inflicted on Bland to the left of the middle line of the chest cavity punctured an artery leading to the heart. Two and one-half quarts of blood were drawn from the pleural cavity. Blood plasma was also administered to him on three different occasions. He was placed under an oxygen tent, because his lungs were weak and he could not get sufficient oxygen from the natural source. The injured party was confined at the hospital for three weeks, during which time he received the best medical attention obtainable. The knife used by appellant had a blade three and a half inches long.

The question of intent of the party offending is ordinarily a question of fact to be determined from his words, acts, and conduct in connection with the weapon or instrument used in the infliction of the injury, together with the character and extent of the wounds.

The jury, who are to determine the intent of the party charged with an offense, have the right to consider the instrument or means used, the seriousness of the injury inflicted, and the result thereof, in arriving at their conclusion of his intent. In the instant case, the jury saw the knife with which the wounds were inflicted; they heard the witness describe the wounds, the treatment that was administered by the attending physician, and the length of time that he was required to remain at the hospital. These were facts from which the jury could determine the intent of appellant. This court would not be justified in holding as a matter of law that the evidence is insufficient to sustain their conclusion on the subject.

By Bill of Exception No. 1, appellant complains of the action of the court in overruling his motion for a new trial based on alleged newly discovered evidence. The newly discovered evidence is set forth in the affidavit of the absent witness, S. Q. Chatman.

The affidavit of Jessie E. Matthews, which was introduced by the State on the hearing of the motion, is to the effect that he and Chatman were working for Ben E. Keith Company on the night in question; that a few days prior to the day of the trial, he, Matthews, talked to Mr. Nelson, one of appellant's attorneys, and told him that Chapman worked for the Ben E. Keith Company on the night in question; that when he started in the direction Bland had driven, Chatman followed him and was only a short distance behind.

.It will thus be noted that appellant did not exercise proper diligence to ascertain what the witness knew or what he would testify to until after the trial. Under the facts disclosed by the record, no error is reflected by the bill. See Branch's Ann. P. C., Sec. 192; Edwards v. State, 172 S. W. 227, and cases there cited. Moreover, the alleged newly discovered evidence would have been but cumulative of the testimony of appellant's witnesses who testified on the trial of the case. Consequently, no such error is shown as would call for a reversal of the case. See Cooper v. State, 103 Tex. Cr. R. 226; Turner v. State, 115 Tex. Cr. R. 609.

Appellant in due time objected to paragraph 16 of the court's charge, wherein he instructed the jury "that if you believe from the evidence beyond a reasonable doubt that the defendant began the difficulty by first drawing his knife or attempting to draw it with an apparent hostile intent before any hostile movement or hostile words by Arthur Bland, or others, the defendant could not be justified on the grounds of self defense, since in such case Bland would have had the right to resort to violence to protect himself, even though the defendant might have reasonably believed at the time he stabbed Bland that his own life was in danger." This paragraph immediately followed the court's charge on the law of self-defense. Appellant's objection thereto was that it was a limitation on his right of self-defense; that there was not any evidence showing that he provoked the difficulty. We think there is merit in his contention.

In the case of Trevino v. State, 83 Tex. Cr. R. 562 (566), this court said, in substance, that it must be borne in mind that provoking a difficulty is always in direct conflict with justifiable homicide, and is not permissible unless the accused by his acts, conduct, or words produced the difficulty. When perfect self-defense is relied upon by the accused, his acts, conduct, and words must precede and lead to the difficulty. If the dif-

ficulty does not so begin, provoking a difficulty is not a part of the case, and a charge limiting the right of perfect self-defense would constitute error.

Under the facts as here disclosed, we have reached the conclusion that the issue of provoking the difficulty is not raised by the evidence and the charge on the subject should not have been given. See Jones v. State, 39 S. W. (2d) 76; Johnson v. State, 149 S. W. 165. The facts merely raised the issue as to who began the difficulty. Under such state of facts the issue of provoking the difficulty is not raised. See Branch's P. C., page 1095, Sec. 1955 and cases there cited. See also Howle v. State, 43 S. W. (2d) 594.

There are other questions raised which we do not deem necessary to discuss, in view of the disposition we are making of this case, as they may not arise upon another trial.

For the error herein pointed out, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

GRAVES, Judge.

This cause was heretofore reversed and remanded because of the fact that the trial court presumptively erred in charging on a provocation of the difficulty, thus depriving appellant of his perfect right of self-defense. The State has filed a motion for a rehearing herein, and cites us to many cases that seem to be in point, and which evidence the fact that our original opinion may have been in error.

A State's witness, who was the injured party, testified that appellant, together with others, passed by a landing dock where fruit was stored for shipment, some being in open boxes; that he saw appellant reach into an orange box and take an orange therefrom that belonged to the Keith Company; that he followed appellant and accosted him, and they had the following conversation:

"I said, 'Sonny boy, where did you get the fruit'? and he said, 'I got it over in colored town and I paid for it, too.' I said,

'oh, no, you didn't I seen you take it off the front dock at Ben E. Keith.' He run his hand in his pocket, and he said, 'You're a God damn lying son of a bitch', and he started at me with his knife open and his hand posed about like that (indicating)," etc.

In the case of Ponce v. State, 186 S. W. (2d) 270, we held that language of a similar nature was sufficient upon which to predicate a charge of provoking a difficulty.

In the case of Flewellen v. State, 83 Tex. Cr. R. 568, 204 S. W. 657, it was held that a statement to the deceased and others of "Run, you sons of bitches", was sufficient grounds upon which to predicate such a. charge. See authorities cited in the Ponce case, supra, many of them being based upon the use of words similar to the quoted words of appellant in the instant case, and this court held the same to be sufficient upon which to base such a charge. See Joyce v. State, 90 Tex. Cr. R. 265, 234 S. W. 895, where language similar to that here present was used. See also McFarland v. State, 196 S. W. (2d) 829. True it is that appellant denied the application of this epithet to Mr. Bland and denied the above quoted statements. However, we held in the case of Crowley v. State, 35 S. W. (2d) 437 as follows:

"In determining whether there be evidence calling for a charge on provoking the difficulty, ordinarily same would not cause the trial court to go beyond the State's evidence, though in some cases this might not be true; but if there be such evidence, it would be the duty of the court to submit the law of such issue, even though the trial court might believe the evidence on the part of the accused to be sufficient to overcome or rebut the theory of provoking the difficulty. The settlement of whether the issue be sustained or rebutted would be for the jury."

We are convinced that we were in error in the reversal of this cause because of the trial court's charge on a provocation of the difficulty. Therefore, the State's motion for a rehearing is granted, the judgment of reversal is set aside, and the judgment is now affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In our original opinion reviewing this case the judgment was reversed because at that time it was believed the issue of provoking the difficulty should not have been submitted. It was not thought necessary to discuss other questions in view of such disposition. In considering the State's motion for rehearing our attention was directed to the one point of the propriety of the charge on provoking the difficulty. Appellant now insists that other questions raised presented error, and insists that in view of the affirmance on the State's motion for rehearing such other questions should be disposed of.

He again urges that the issue of provoking the difficulty should not have been submitted. We pretermit further discussion on that point, believing our opinion on the State's motion for rehearing properly disposed of that question.

In bill of exception number two complaint is brought forward of misconduct of the jury in that it is claimed they received other evidence after retirement to consider their verdict regarding the effect of the indeterminate sentence and parole laws. One case to which we are cited is Pena v. State, 137 Tex. Cr. R. 311, 129 S. W. (2d) 667, in which the district attorney made an argument construing the indeterminate sentence statute, which argument was shown to have been considered by the jury. This argument was thought to have been harmful and to present reversible error. Another case relied on by appellant is Clark v. State, 76 Tex. Cr. R. 348, 174 S. W. 354. This case is not thought to shed much light on the question. We are also cited to Weaver v. State, 85 Tex. Cr. R. 111, 210 S. W. 698, where the jury discussed several specific instances of executive clemency, and were urged by some of the jury to assess a death penalty because of clemency in previous cases, naming them. In King v. State, 141 Tex. Cr. R. 257, 148 S. W. (2d) 199, it was shown that a discussion arose among the jury as to the percentage of time the defendant would actually be required to serve in the penitentiary, whereupon the foreman of the jury said he "had read somewhere along the line that one third was allowed to some prisoner somewhere along the line in some state for good behavior." As a result of this remark a note was sent to the judge asking for some instruction on the subject. This the judge declined to give. It was shown that at the time this incident occurred the jurors varied widely as to the punishment. It was held no error was shown although the penalty was assessed at twenty years in the penitentiary when the minimum which might have been assessed was only two years. Appellant also relies upon the more recent case of Price v. State,

(page 161 of this volume 199 S. W. (2d) 168), where there was a conviction for murder. The jurors were divided as to the punishment, one was for the death penalty, one for fifty years, one for twenty-five years, and the remainder for life imprisonment. The foreman of the jury told the others that if they fixed the punishment at any number of years defendant would, in the course of a few years, be subject to parole, but if they assessed it at confinement in the penitentiary for life, he could not be paroled. The jury then all voted for life imprisonment. It was held that the effect of the statement was not only to advise the jury as to the application of the indeterminate sentence statute, but incorrectly so. The occurrence was held to present reversible error.

In the present case Mr. Bridwell was foreman, and we have only one juror, Mr. Culpepper, testifying on the hearing of the motion for new trial. In substance, he said that after the jury retired they first took a vote on whether appellant was guilty of assault to murder with malice, and none voted for that; the next vote was whether appellant was guilty of assault to murder without malice. The witness (Culpepper) and Mr. Davis voted for aggravated assault, the other ten jurors were for assault to murder without malice, some wanting to give him two years in the penitentiary, and others three years. The ten finally came to two years in the penitentiary. The witness and Davis were holding out for aggravated assault and one year in jail. At this point we quote witness' testimony.

"* * * We didn't seem to be getting any closer to an agreement and finally Mr. Bridwell said that we were not so far apart if we could give him two years because he would not have to serve it all anyhow because if he goes down to the penitentiary and acts right he would get out within fourteen or sixteen months. Mr. Bridwell suggested that if he behaved himself he would get out of the penitentiary within fourteen or sixteen months. There wasn't any evidence introduced upon the trial of the case regarding the limit of the sentence or the time he would have to serve in the penitentiary. That was the first time I had heard that by good behavior, as stated by Mr. Bridwell, that he would be released from the penitentiary in fourteen to sixteen months if we gave him a sentence of 24 months. I had not thought about that up to that time. That caused me to agree to raise my term more than one year, from one year to two years. Mr. Davis suggested 'In that case I believe I could vote for two years,' and then I agreed to the two years."

On cross examination he testified:

"* * * I talked to you in the Judge's office a few minutes ago, and told you that Mr. Bridwell didn't say that he would get out in 14 or sixteen months, but that he probably could get out; that is what I got through testifying about. Mr. Bridwell suggested if we gave him two years he would get out in 14 to 16 months if he behaved. I took it to mean that Mr. Bridwell suggested he possibly could get out, or that he would get out. I don't think Mr. Bridwell stated it as a positive fact but he said that he possibly would. He said if he went down and behaved himself he would get out in 14 or 16 months. I understood Mr. Bridwell to say that if the colored boy went down there and conducted himself properly that he would not have to serve more than fourteen or sixteen months. I understood that to be Mr. Bridwell's opinion and the other three or four joined in and agreed."

It will be noted that Mr. Bridwell did not attempt to state any proposition of law, nor give any definite time appellant would be credited with for good behavior. It is a matter of common knowledge that prisoners are credited with extra time for good behavior, and the statement of Mr. Bridwell was in the nature of an argument which might arise in most any case where the jury was attempting to reach an agreement as to the punishment where the jurors entertained different ideas. The trial judge, after hearing the evidence of Mr. Culpepper, declined to grant a new trial. He was justified in concluding that if the foreman expressed the opinion that if appellant behaved himself he would probably get out in fourteen or sixteen months, on a two years sentence, it was not misconduct demanding a new trial. The case is not unlike King v. State, 141 Tex. Cr. R. 257, 148 S. W. (2d) 199.

Appellant also brings complaint based on the allegation that the trial court failed to instruct the jury that in determining whether he acted in self defense against apparent danger the facts and circumstances must be viewed from the standpoint of appellant at the time he acted. We are cited to Branch's Ann. Tex. P. C., p. 1077, and the many cases there listed, and to Tex. Jur., Vol. 22, Sec. 287 and Sec. 288, and especially to Singleton v. State, 86 Tex. Cr. R. 401, 216 S. W. 1094. We are in accord with the general proposition asserted by appellant. However, we find that in paragraph 15 of the court's charge the jury was told that if from the words or conduct of the injured party or others there was created in appellant's mind a reasonable apprehension of death or serious bodily injury at the hands of said Bland or others, that appellant would have the

right to defend himself and to cut Bland in order to prevent injury to himself, and that:

"* * * it is not necessary to the right of self defense that the danger should in fact exist, but if it reasonably appeared to the defendant at the time, viewed from his standpoint, that such danger did in fact exist, he would have the same right to defend himself against such apparent danger that he would have were the danger real. And a person so unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant.

"Now, therefore, if from the evidence before you, you believe the defendant cut the said Arthur Bland but you further believe that at the time of so doing, Bland, either alone or with others, had made an attack on the defendant or was making or about to make an attack on him with a stick or other weapon, which, from the manner and character of its use, and from their words and action and the relative strength of the *party,* caused the defendant to have a reasonable expectation or fear of bodily injury and that acting under such reasonable expectation or fear the defendant cut the said Bland, then you should acquit the defendant."

Where the jury has once been instructed upon a proposition of law it is not necessary that it be repeated in every paragraph of the charge. The court having given the above instruction was not required to give the special charge requested upon the same subject. See Harris v. State, 111 Tex. Cr. R. 130, 12 S. W. (2d) 211; Payton v. State, 60 Tex. Cr. R. 475, 132 S. W. 127; Owens v. State, 63 Tex. Cr. R. 633, 141 S. W. 530, where the instructions given are copied in the opinion, and present an almost exact counterpart of those found in the present case.

By bill of exception number seven appellant complains because a graduate nurse was permitted to testify as to some of the matters elicited from her, the objection being that she lacked the necessary training, experience and qualifications to testify as an expert. She was not expressing an opinion from hypothetical questions, but from actual observation of the patient in aiding the doctor in his treatment. We have carefully read all of her testimony, both on direct and cross examination, and think the court not in error in permitting her evidence to go to the jury.

Bill of exception number one brings forward complaint asserting that the trial court was in error in not granting a new trial for the claimed newly discovered evidence of one Chatman. This question was disposed of properly, we think, in our original opinion, and further discussion of is pretermitted.

Appellant's motion for rehearing is overruled.