ROBERT BENNETT JOHNSON, JR. V. STATE

No. 29,064. June 26, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) October 23, 1957.

*Meredith, Adams & Sheppard,* Longview, for appellant.

*Ralph Prince,* Criminal District Attorney, *Paul J. McClung* and *James Ross,* Assistants Criminal District Attorney, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for murder without malice; the punishment five years in the penitentiary.

The state's testimony shows that shortly before the killing,

loud talk and cursing was heard at the back of appellant's house; that appellant, while standing in the back door, was heard several times trying to get the deceased to take something back, but the deceased was heard to say "he wouldn't" and was telling the appellant that appellant was wrong, and then deceased walked away; that appellant stepped out the back door with a .12 gauge shotgun, aimed it at the deceased who was a short distance away, then someone said: "Don't shoot," and the deceased turned around, started toward appellant, grabbed for the shotgun or the appellant, missed, and was shot in the stomach by the appellant. The deceased was not heard to have made any threats and he had no weapon in his hands and made no movement to get a weapon except the gun of the appellant.

Proof was made that a hole about an inch or an inch and one-half in diameter in the abdomen of the deceased caused his death.

Appellant, testifying in his own behalf, stated that when he went back to the back door the deceased appeared, asked him for a drink and he told the deceased that he didn't have one. Then, "He (deceased) said, 'Well, they said that you said you were going to get some.' I said, 'You know I don't drink.' I say, 'I don't want nothing to drink.' And he says, 'You're a liar.' And I said, 'I don't like to be arguing around like that.' I say, 'why do you keep picking on me?' * * * 'You've done run me twice.' I say, 'You come to my house and you cussed out my wife and wanted to cut me all up,' and I say, 'And then you run me down one night in the car,' I say, 'I taken that one.' I say, 'Why don't you quit picking at me?' And he told me, 'I'm going to kill you.' " He further testified that the deceased left, soon returned, again cursed him, and advanced toward him with his hand in his pocket, then he got his shotgun which was inside the house by the door, the deceased kept advancing, and when the deceased reached for the shotgun he shot him because he was afraid the deceased was going to kill him.

Error is urged because the court permitted the state to introduce defendant's application for a continuance wherein he alleged that he expected to prove by the absent witness, Mary D. Ward, that the appellant shot the deceased while standing in his (appellant's) door and that there was an argument between them before the shooting, over his objection that the application for a continuance reflects only the testimony he expects to prove but does not state that said absent witness would so testify if present.

Mary D. Ward appeared and testified on the trial that she saw the deceased in appellant's yard at the time in question but that she did not hear any argument between them.

In view of the abundance of testimony including that of the appellant that he was in the back door or near it when he shot the deceased the admission in evidence of allegations to that effect in the application does not show error. Appellant's sworn application affirmatively avers that the absent witness Ward would testify there was an argument and that harsh words were used by deceased, and her testimony offered on the trial by the appellant does not support such averment. It was material to the state to show the falsity of any relevant averments in the application for a continuance. Therefore its admission in evidence was not error. Wright v. State, 130 Texas Cr. Rep. 37, 91 S.W. 2d 715.

The court submitted the issue of self-defense and instructed the jury to acquit if they believed it reasonably appeared to the appellant, viewed from his standpoint, that he was in "fear of death or serious bodily injury, or any injury" at the hands of the deceased.

Appellant insists that the evidence raised the issue of defense of habitation separate and apart from the apprehension of death or serious bodily injury, and that the court erred in failing to charge the jury upon his right to defend his home.

Appellant's testimony of the facts at the time of the killing in addition to those heretofore stated is: "The background was that he asked me for a drink and I told him I didn't have none, and he put me in the Dozen" which he asked him to take back. "He told me, he say — I told him not to — I told him to take it back. He say, 'I'll take it back.' Say, 'You wait 'til I come back,' say 'I'm going to fix you up good.' Well, he left and I walked back in the house. I heard him coming—I heard him talking, cursing, coming back up the street. Well, I just walked to the door there and was standing in the door, and he started up toward me and I said, 'Frank,' I said, 'Don't come up here,' and he kept a-walking. Well, he had his hand in his pocket. I didn't know what he had in his pocket, so when he reached for the shotgun, well, I just pulled the trigger on him." "I didn't get the gun until he started up to the back steps there." "Q.. You were afraid of him? A. Yes, sir, *I didn't think he was coming in my house* because I was standing in my back door and I didn't see where he had no right to come in my house

bothering me." "Q. All right, now, as a matter of fact, you shot that boy when he grabbed for that gun because he knew you was going to kill him, didn't he? A. No, sir, I was scared he was going to kill me." "Q. You say, your testimony is that he was advancing on you and so you shot him. A. Yes, sir."

There is no evidence that the deceased made any effort to injure or remove any of appellant's property. Without evidence to raise such issue there is no error in failing to charge on the right of the appellant to protect his home. Ross v. State, 75 Texas Cr. Rep. 59, 170 S.W. 305; Beggs v. State, 124 Texas Cr. Rep. 1, 60 S.W. 2d 241.

Complaint is made of the court's failure to charge on self-defense against a milder attack as provided in Art. 1224, Vernon's Ann. P.C.

The court charged the jury that if from the standpoint of the defendant, "it reasonably appeared to him that his life or person was in danger of *injury* and there was created in his mind a reasonable expectation or fear of death or serious bodily injury, *or any injury,* then * * * (to) acquit the defendant, or, if you have a reasonable doubt * * * (to) acquit him."

The above charge was more favorable to the appellant than a charge applying the provisions of Art. 1224, supra, setting forth the law of defense against a milder attack because it told the jury that if it reasonably appeared to the defendant that his person was in danger of *any injury* to acquit him. Hence no error is shown.

Appellant insists that the trial court erred in overruling his motion for a new trial.

It is alleged that one of the jurors stated in the presence and hearing of the others, while they were deliberating that he had on one occasion parked his car where the killing occurred and that it was only five or six feet from the hydrant to the door in which appellant stood when he shot the deceased, whereas there was an issue on the trial as to whether the distance from the hydrant to the door was sixteen feet and that the deceased advanced on appellant that distance.

It was further alleged in said motion that one of the jurors stated in the presence and hearing of the other jurors that if

they assessed the punishment at five years, the defendant would not have to serve but *about* two years of such sentence.

We dispose of the statement as to when the appellant would be eligible for parole by observing that the comment of the juror, if made, was not untrue or harmful to the appellant. In Roberson v. State, 160 Texas Cr. Rep. 381, 271 S.W. 2d 663, we applied the rule set forth in Art. 775a, Vernon's Ann. C.C.P. (parole), and concluded that the statement made by the juror was not inaccurate and said: "Our primary concern is to determine whether or not the information which was received by the jury was untrue or was harmful to appellant."

As to the distance between the hydrant and the back door we observe that the juror who allegedly made the statement emphatically denied that he had done so and therefore an issue of fact was raised for the trial court's determination. In the absence of a showing of abuse of discretion, this court will not disturb such a finding. Jaynes v. State 164 Texas Cr. Rep. 147, 296 S.W. 2d 934.

The evidence is sufficient to sustain the conviction and no reversible error appearing, the judgment of the trial court is affirmed.

Opinion approved by the Court.